MAY J. NEAFIE, DEFENDANT IN ERROR, v. HOBOKEN PRINTING AND PUBLISHING COMPANY, PLAINTIFF IN ERROR.

Submitted July 8, 1907—Decided November 18, 1907.

1. In an action for libel, the mental anguish and suffering of the plaintiff, caused by the publication of the libel, may properly be taken into consideration by the jury in estimating compensatory damages.

2. Under the "Act relating to libels" (*Pamph. L.* 1898, *p.* 476), an averment in the declaration that plaintiff was "injured in her good name, fame and credit, and brought into public scandal, infamy and disgrace," amounts to a special allegation of damages sufficient to warrant the award of substantial compensation to the plaintiff, as against the publisher of a newspaper, although there be no request for retraction and no evidence of express malice.

3. If the act referred to (*Pamph. L.* 1898, *p.* 476) were to be construed as excluding (in the absence of proof of express malice or failure to retract the libel upon request) all allowance of compensation for the general injury to the plaintiff's reputation, such construction would render the act unconstitutional, the legislature having no power to authorize a newspaper publisher or any other citizen to unjustifiably injure his neighbor's reputation without making compensation.

4. Good motives, or the absence of specific malice, are important considerations in mitigation of punitive damages, but they are no answer to a claim for compensatory damages.

On error to the Supreme Court.

For the plaintiff in error, *Bedle, Edwards & Holmes.*

For the defendant in error, *William H. Speer.*

The opinion of the court was delivered by

PITNEY, J.    Mrs. Neafie sued to recover damages for an alleged libel published in the "Observer," a daily newspaper published by the defendant, under date of March 18th, 1903. She recovered a verdict for substantial damages, and the judgment in her favor thereupon entered is now under review.

This is a second trial, the first verdict having been set aside by the Supreme Court, on rule to show cause, for the erroneous submission to the jury of the question of punitive damages. *Neafie* v. *Hoboken Printing and Publishing Co.,* 43 *Vroom* 340.

Some of the assignments of error relate to the admission of evidence. The question who were the officers of the defendant corporation in January, 1903, and the contents of articles published by defendant in the same newspaper July 30th, 1904, and March 6th, 1906, relating to the general subject-matter that was under discussion in the alleged libelous article of March 18th, 1903, were, as we think, properly admissible as part of the proof under which plaintiff proposed to show ground for the allowance of punitive damages.

It is argued that it is *res adjudicata* in this case that the plaintiff has no right to punitive damages. This, of course, is not so. What was held in 43 *Vroom* 340 was that the evidence that was introduced upon the first trial did not justify the submission of this question to the jury. Nevertheless it was open to the plaintiff upon the second trial to ask for punitive damages if she could introduce sufficient evidence to warrant their allowance. When the proofs were all in, the trial judge, in his instructions to the jury, excluded from their consideration the question of punitive damages—whether rightly or wrongly is of no present concern. He was not in terms asked to strike out the evidence just referred to, but his instruction in effect excluded it from the consideration of the jury.

Exception was taken to the statement of the trial judge to the jury that the newspaper article upon which the suit was based (that of March 18th, 1903) was libelous on its face. What he said was: "The article in the paper of March 18th, 1903, is libelous on its face. It accuses the plaintiff of unfaithfulness to her husband. It holds her up to the ridicule and scorn of the community. Her good name is attacked. Under any fair interpretation of the language found in the article, it charges the plaintiff with the crime of adultery. The article is clearly libelous, and if published by the defend-

ant corporation a verdict can be found against it." In our opinion this was a correct characterization of the article in question.

Exception was taken to the refusal by the trial judge to charge one of the propositions requested by the defendant, which has pertinency only in the event that the question of defendant's liability for punitive damages was under consideration. As the judge expressly excluded such damages from consideration, this request was rendered unnecessary.

Error is assigned with respect to the instruction that the jury might consider the mental anguish and mental suffering of the plaintiff caused by the publication of the article in question. The exception, as taken at the trial, was not sufficient to direct the judge's mind to the criticism, now made, that mental anguish cannot be considered in estimating compensatory damages in an action of libel. Moreover, the law is well settled that such anguish may properly be taken into consideration. A recent case in this court is *Knowlden* v. *Guardian Printing and Publishing Co.*, 40 *Vroom* 670. The case of *Butler* v. *Hoboken Printing and Publishing Co.*, 44 *Id.* 45, cited upon this point, does not sustain the contention of plaintiff in error. In that case the Supreme Court held that while mental anguish and suffering are ordinarily the necessary results from defamation of character, and so may be said to be legally inferred from the fact of defamation, yet physical illness produced by such mental suffering is not the ordinary consequence, and therefore not the proximate consequence of the defamatory words.

Exception was taken to the refusal of the trial judge to charge the following request: "The plaintiff, having failed to request the 'Observer' to retract the alleged libel, she can in this suit, without proving malice in fact, recover only her actual damages proved and specially alleged in the declaration." This request is based upon the act of June 13th, 1898, relating to libels (*Pamph. L., p.* 476), which declares that in a civil action for libel against the publisher of a newspaper or the like, the defendant may give proof of intention, and unless the plaintiff shall prove either malice in fact, or

that the defendant, after written request to retract, failed to do so within a reasonable time, the plaintiff shall recover only "his actual damage proved and specially alleged in the declaration."

We have already intimated, in *Stuart* v. *News Publishing Co.,* 38 *Vroom* 317, and we now hold, that under this statute an averment in the declaration that the plaintiff was "injured in his good name, fame and credit, and brought into public scandal, infamy and disgrace," amounts to a special allegation of damages sufficient to warrant the award of substantial compensatory damages by the jury.

The declaration in the present case contained an averment of damage to the general reputation of the plaintiff, in substantially the words above quoted, besides sundry averments of "special damage," strictly so called.

If it be argued that the act of 1898 must be construed in the light of the common-law terminology in actions of libel, and that by "actual damage proved and specially alleged in the declaration" it was intended by the legislature to exclude (in the absence of proof of express malice or the failure to retract the libel upon request) all allowance of compensation for the general injury to plaintiff's reputation, it is sufficient, we think, to say that to adopt such a construction would necessarily render the act unconstitutional. The right of a person to be secure in his reputation against unwarranted attacks such as slanders and libels is a part of the right of enjoying life and pursuing and obtaining safety and happiness which is guaranteed by our fundamental law. *New Jersey Constitution, art.* 1, *pl.* 1. And the same instrument, in conferring upon every person the right to freely speak, write and publish his sentiments on all subjects, imposes at the same time a responsibility for the abuse of that right. In short, the people of this state, who ordained the constitution, have not empowered the legislative body to authorize a newspaper publisher or any other citizen to unjustifiably injure his neighbor's reputation without making compensation for that injury. Good motives, or the absence of specific malice, are important considerations in mitigation of punitive dam-

ages, but they are no answer to a claim for compensatory damages. *Knowlden* v. *Guardian Printing and Publishing Co., supra.*

The judgment under review should be affirmed.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, J.J.   12.

*For reversal*—None.