Carole FOSTER, Administratrix of the
Estate of Helen Louise Stringer,
Deceased, Appellant,

v.

John I. LEGGETT, Appellee.

Court of Appeals of Kentucky.

June 9, 1972.

Frank K. Warnock, Greenup, for appellant.

Charles M. Daniels, Greenup, for appellee.

C. R. WALDEN, Special Commissioner.

Appellant, plaintiff below, prosecutes this appeal from a summary judgment against her, in her capacity as personal representative, in an action to recover damages for the wrongful death of her decedent.

On September 9, 1967, appellant's decedent, while a guest passenger in an automobile owned and operated by appellee, was killed in a traffic accident north of Portsmouth, Ohio, on U.S. Route No. 23, a four-lane divided highway. Appellant administratrix filed suit in the Greenup County Circuit Court seeking to recover damages for the wrongful death of deceased and burial expenses, alleging both ordinary and gross negligence in the operation of the automobile by appellee. Appellee was before the court on personal service.

Appellee answered the suit, and, among other matters, pleaded section 4515.02 of the Ohio Revised Code, commonly known as the Guest Statute, which provides, in substance, that a nonpaying guest cannot recover damages for injury or death from the owner-operator of a motor vehicle, un-

less such injuries or death are caused by the *wilful* or *wanton* misconduct of such operator, owner, or person responsible for the operation of said motor vehicle.

Appellee's deposition revealed that he was forty-seven years of age, both he and decedent were divorced and both of them were employed by the C & O Railroad and worked in the same office at Russell, in Greenup County, Kentucky. They had been so associated in this work for several years. The deceased, Mrs. Stringer, had lived all her life in Greenup County, Kentucky. Appellee, for a while in the 1930's, had lived in Greenup County, but at the time of the accident, and for several years prior thereto, he had lived in Portsmouth, Ohio, across the Ohio River from Russell, Kentucky. Appellee made his home with his parents in Portsmouth, voted, paid taxes, licensed his automobile, and did his banking and other such activities as would indicate legal domicile in the State of Ohio. In fact, counsel are agreed that at the time of the accident on September 9, 1967, appellee was legally domiciled in the State of Ohio. Over the years, for convenience, appellee had often stayed at the Russell Y.M.C.A. For about one year prior to the accident appellee had kept a room rented at the "Y" by the week. He stayed in this room about two nights a week, on the average. Appellee and Mrs. Stringer had been dating for several months. The day before the fatal accident they played golf. At this time it was planned and agreed that the next day they would go to Columbus, Ohio. Appellee was to transact some business, the deceased wanted to shop, they would have dinner, go to a show or the races, and return to Russell the night of the same day. Pursuant to this plan, appellee spent the night in his room at the "Y" and the next morning, drove his 1966 Dodge automobile, picked up decedent at her home and they proceeded on their journey to Columbus, Ohio. It was raining and the highway was wet. They were traveling on U.S. Highway No. 23, a four-lane highway, two lanes north and two lanes south, divided by a twelve-

foot grassed median. A short distance north of Portsmouth, appellee, in attempting to pass a vehicle, lost control of his automobile and crossed the median into the path or lane of a vehicle going south on the highway. Mrs. Stringer and the driver of this southbound vehicle were killed.

Both appellant and appellee filed motions for summary judgment. The trial court overruled appellant's motion and sustained appellee's motion and dismissed the complaint. The basis of the trial court's ruling is as stated in the court's findings of fact and conclusions of law that the Guest Statute of the State of Ohio should apply, and there being no evidence of any wilful or wanton misconduct on the part of appellee, as a matter of law appellant could not recover.

The question to be determined is whether the law of Ohio or the law of Kentucky applies in this case.

Counsel for appellee recognizes that in the case of Wessling v. Paris, Ky., 417 S. W.2d 259 (1967), we very substantially departed from the age-old and almost universal doctrine that liability for torts was governed by the law of the place where the tort occurred (lex loci delicti), as stated in Ansback v. Greenberg, Ky., 256 S.W.2d 1 (1952). In Wessling we stressed the fact that to continue to follow the old rule, though simple, avoids and ignores the necessity of examining the true relationship of the parties and other considerations which may well be more consonant with a proper and just result. In Wessling, as appellee points out, we recognized that the facts of that case presented a simple case and no common sense reason could be advanced for holding otherwise, but for the time being we would limit the application of the rule to very clear cases, such as were the facts in Wessling. We never intended to hold that the rule never again would be extended or applied unless the facts were identical with the facts in Wessling.

In the case of Arnett v. Thompson, Ky., 433 S.W.2d 109 (1968), a couple of Ohio

residents, husband and wife, were involved in an automobile accident in Kentucky. The wife sued her husband to recover damages for her personal injuries. The husband, claiming the law of the State of Ohio was applicable, pleaded the Ohio Guest Statute and in addition thereto pleaded the common law of Ohio which denied the wife the right to sue her husband for a tort, thus raising a "double barrel" conflict question. In denying the husband's argument, we held that the *conflicts* question should not be determined on the basis of "weighing of interest" as we had done in Wessling, but on the basis of whether Kentucky had "enough" or "sufficient" contacts to justify applying Kentucky law. We thus held the fact that the accident occurred in Kentucky was, standing alone, enough contact to justify the application of the law of Kentucky. In considering our opinions in Wessling and Arnett, it may be proper to raise the question if we have accepted the rule of "most significant contacts" (Restatement of Law 2d, Conflicts of Law 2d, section 146) to apply to Kentucky residents involved in another state and the rule of "enough contacts" for residents of other states involved in Kentucky. Such is not the holding or policy of this court.

It is correct to say that we have abandoned the pure lex loci rule as enunciated in Ansback v. Greenberg, Ky., 256 S.W.2d 1 (1952), and numerous prior decisions, for the simple reason that it is unfair and unjust to defeat the legitimate and reasonable rights of the parties, without regard to the circumstances and facts of the particular case, and in order to follow an antiquated rule of law that is now, and always has been, highly controversial. Cases from other jurisdictions, articles found in the Law Journals, and articles by commentators, indicate that the courts are getting away from the strict application of the lex loci rule. In so doing all sorts of legal theories are relied upon.

When the court has jurisdiction of the parties its primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reasons. We have not, therefore, tried to adopt a rule, or rules, for all cases of this kind which may come before us.

In the case at bar, contacts with Kentucky were numerous and significant. Decedent was a lifelong resident of Kentucky. While appellee was a resident of Ohio, he kept a rented room near his work in Kentucky, stayed in it on the average of two nights per week and all his employment and most of his social relationships were in Kentucky. The fatal journey began in Kentucky and was to have been concluded in Kentucky.

So we conclude that the reasons appellee here advances, that the accident occurred in the State of Ohio and that appellee was domiciled and had a residence in that state, are not sufficient in view of the contacts the State of Kentucky had with the parties to justify the displacement of the law of this forum with the law of the State of Ohio. We are now reaffirming our position taken in Wessling v. Paris, supra, that if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied.

The judgment is reversed and the case remanded for proceedings consistent with this opinion.

STEINFELD, C. J., and HILL, PALMORE and NEIKIRK, JJ., concur.

OSBORNE, REED and MILLIKEN, JJ., dissent.

OSBORNE, Judge (dissenting).

I respectfully dissent for the reasons shown in the dissenting opinion of Wessling v. Paris, Ky., 417 S.W.2d 259 (1967).

REED, Judge (dissenting).

I respectfully dissent from the majority opinion but for reasons different from the one given by Judge Osborne in his dissent. That dissent, as I understand it, is based upon the sole proposition that the law of the place of the tort should be uniformly applied without exception. In my view, the modern trend of authority and the clear preponderance of judicial decisions of recent vintage have rejected the principle that the law of the place of the tort is an immutable, inflexible fiat by which the forum jurisdiction is bound. The rule advocated by Judge Osborne has the virtue of simplicity and promotes predictability, but with the modern weight of authority so clearly to the contrary it is my conclusion that the admittedly desirable elements of simplicity and predictability must yield to overriding policy considerations to achieve more realistic results. These results are just because they are realistic.

In my opinion, nevertheless, the pertinent issues are under what circumstances and to what extent must these elements of simplicity and predictability yield. The recent developments in the law applicable to the problem in this jurisdiction have served to obfuscate rather than to clarify what a local court should do when it is confronted with the necessity of a choice of law between that of this jurisdiction and of a foreign jurisdiction. The situation posed in the instant case is an excellent example of the general problem cast in the setting of a recurring type of specific event.

The majority opinion recites that in this wrongful death action, instituted in a Kentucky court, the plaintiff's decedent was a resident of and domiciled in Kentucky. It also frankly admits that the defendant was a resident of and domiciled in Ohio. The trip which ultimately resulted in the tragedy commenced in Kentucky and was intended to end in Kentucky. The party whose conduct is asserted to have been negligent and caused injury on an Ohio highway was a resident of and domiciled in that state at the time of the occurrence of both the conduct and the injury upon which this action is based.

From reading the opinions of this court in the cases of Wessling v. Paris, Ky., 417 S.W.2d 259 (1967), and Arnett v. Thompson, Ky., 433 S.W.2d 109 (1968), I am at a loss to understand the statement in the majority opinion that this court is now reaffirming the position it took in the Wessling case. Casual reading of the two opinions to which we have just referred immediately illustrates that the Arnett case materially changed the impression given in the Wessling case.

In the Wessling case two residents of Kentucky made a trip across the bridge to New Albany, Indiana. The guest was injured. The driver host contended that the law of Indiana applied. Indiana had a guest-passenger statute the application of which, since it required careless conduct amounting to more than simple negligence, would have precluded recovery. The opinion pointed out that both the plaintiff and defendant were residents of and domiciled in Kentucky. It suggested that the Indiana policy of protecting drivers on that state's highways from claims by passengers demonstrated an interest in protecting Indiana residents or those who sue in Indiana courts. All significant contacts concerning the standard of care emanated from Kentucky.

In the Arnett case two residents of Ohio who were married to each other were involved in an automobile accident that occurred in Kentucky. In a multi-party action, a claim was asserted by the Ohio wife against her Ohio husband. Kentucky had abolished inter-spousal immunity; Ohio had not. Under Kentucky law, the husband was subject to liability to the wife for his negligence. Under Ohio law neither could recover from the other. This court applied Kentucky law. The Wes-

sling case was distinguished and was materially modified. In Arnett, this court appeared to commit itself to a rule that rejected both the law of the place of the tort principle and the weighing of significant contacts theory that had been espoused in the Wessling opinion but limited to "a very clear case." According to Arnett, the proper inquiry was whether Kentucky had enough contacts to warrant applying its law. If the accident occurred in Kentucky, the Arnett opinion reasoned, there was enough contact from that fact alone to justify applying Kentucky law. Arnett also declared that if *both* of the parties to the action are residents of Kentucky and the only relationship of the case to another state is that the accident happened there, Kentucky has enough contacts to justify the application of Kentucky law. The Arnett case could have been decided but would have achieved a different result by simply applying Restatement of Confl. of Laws 2d, 169(2), which states the proposition that so far as the issue of intra-family immunity is concerned, the applicable law will usually be the local law of the state of the parties' domicile. That result would have been, in my view, more realistic and just.

When Wessling and Arnett were written the Restatement of Conflict of Laws 2d was in tentative draft form. It has now been adopted in final form by the American Law Institute. Section 175, Restatement of Confl. of Laws 2d, states:

"In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

Section 6 embodies the choice of law principles commonly referred to as the weighing-of-contacts approach.

It seems to be that the elements of simplicity and predictability have been pushed aside too far by the majority opinion in this case. The local law of the state where the injury occurred is the first choice and should control unless with respect to a particular issue some other state has a more significant relationship according to the principles of the Restatement. This approach requires surrender of the elements of simplicity and predictability only where a state other than that of the place of injury has a more significant relationship with respect to the particular issue.

In the case before us, the public policy of Ohio was to protect hosts from the claims of gratuitous guests except in instances of aggravated forms of negligence. The defendant was a resident of and domiciled in Ohio. The Ohio statute was meant to protect him. Surely it was meant to protect him while he drove on Ohio highways. Liability insurance afforded Ohio residents could well be negotiated and charged for on the basis of that state's law. The decision of the majority has extended a choice of law principle far beyond the general body of case law on which the Restatement principles are based and opens Kentucky as a forum which will instantly apply its own law upon any excuse whatever, regardless of policy considerations of sister states to the contrary. One would hope that the sister states do not afford residents and domiciliaries of Kentucky the same treatment in actions based upon conduct and injury in Kentucky. I, therefore, respectfully dissent and would affirm the judgment of the circuit court.

MILLIKEN, J., joins in this dissent.