Timothy BONNLANDER, Appellant,

v.

LEADER NATIONAL INSURANCE COMPANY, Appellee.

Robert BONNLANDER, Jr. Appellant,

v.

MOTORISTS MUTUAL INSURANCE COMPANY, Appellee.

Nos. 95–CA–1473–MR, 95–CA–2939–MR.

Court of Appeals of Kentucky.

Oct. 11, 1996.

Discretionary Review Denied by Supreme Court Aug. 27, 1997.

Jeffrey S. Bakst, Cincinnati, Ohio, for Appellants, Timothy Bonnlander and Robert Bonnlander, Jr.

Gene F. Zipperle, Jr., Louisville, for Appellee, Leader National Insurance Company.

James G. Osborne, Covington, for Appellee, Motorists Mutual Insurance Company.

Before GARDNER, JOHNSON and SCHRODER, JJ.

SCHRODER, Judge:

These are consolidated appeals from summary judgments entered in favor of appellee insurance companies on appellants' claims for underinsured motorist benefits. After considering appellants' arguments, the record herein and the applicable law, we believe the court properly applied Indiana law in construction of the policies and, thus, affirm both appeals.

On October 3, 1992, appellants, Timothy Bonnlander and Robert Bonnlander, Jr., and two others, Donnie Money and Kenneth Bonnlander, were injured in an auto accident while in a van owned by their employer, Robert Hamon. At the time, they were acting within the scope of their employment

with Robert Hamon, d/b/a Hamon Construction, located in West Harrison, Indiana. All of the four injured in the van were residents of Indiana at the time of the accident.

The accident occurred on Ky. Rt. 237 in Boone County, Kentucky. The driver of the car which allegedly caused the accident was Nancy Sebastian, a Kentucky resident. Nancy Sebastian had liability insurance with West America in the amount of $100,000 per person and $300,000 per accident.

Appellant, Timothy Bonnlander, claimed medical expenses in excess of $100,000. At the time of the accident, he had underinsured motorists insurance ($25,000 per person, $50,000 per accident) through appellee, Leader National Insurance Company ("Leader National") on two vehicles. His policy with Leader National was written in Ohio, but was an Indiana Easy-to-Read Auto Insurance Policy citing specific references to Indiana law.

Appellant, Robert Bonnlander, Jr., claimed he had underinsured motorists coverage through his father, Robert Bonnlander, Sr., with appellee, Motorists Mutual Insurance Company ("Motorists Mutual"). He had underinsured motorists coverage on two cars in the amount of $100,000. Robert Bonnlander, Jr. claimed medical expenses in excess of $10,000.

On December 15, 1992, appellants, Timothy Bonnlander and Robert Bonnlander, Jr., along with the other two injured parties, Kenneth Bonnlander and Donnie Money, and Money's wife, Tanya Money, brought a negligence action against Nancy Sebastian for their personal injuries sustained in the accident. Leader National and Motorists Mutual thereafter intervened in the action. Subsequently, the plaintiffs settled with the tortfeasor's insurer, West America, for the policy limits. The record reveals that appellant, Robert Bonnlander, Jr., received $14,000, but does not indicate how much the other plaintiffs, including appellant, Timothy Bonnlander, received.

On February 2, 1995, plaintiffs/appellants, Timothy Bonnlander and Robert Bonnlander, Jr., filed a joint motion for summary judgment for underinsured motorist benefits with

Leader National and Motorists Mutual, respectively. Both appellants also claimed said underinsured benefits should be stacked. Leader National and Motorists Mutual both responded and filed their own motions for summary judgment.

■ The dispositive issue decided on both claims was whether Indiana or Kentucky law applied in construing said policies as to the underinsured motorist coverage. The court found that Indiana law applied on both claims. With regard to Timothy Bonnlander's claim against Leader National, the court entered judgment in favor of Leader National, finding that under Indiana law and the language of the policy, Timothy Bonnlander was not entitled to underinsured motorist coverage because the limits of liability insurance available to him were not less than the underinsured motorist coverage limits.

Relative to the claim of Robert Bonnlander, Jr. against Motorists Mutual, the court granted Robert Bonnlander, Jr.'s motion for summary judgment in part, ruling that under Indiana law and the language of the policy, he could be entitled to underinsured motorist coverage up to $86,000. The court so ordered because under the policy, the insured was entitled to underinsured motorist coverage to the extent that the underinsured coverage limits are reduced by payments of liability insurance to others to less than the limits of the underinsured motorist coverage available to the party. The court also granted Motorists Mutual's motion for summary judgment in part, ruling that under Indiana law, the underinsured motorist coverage available to Robert Bonnlander could not be stacked. From the two summary judgments, Timothy Bonnlander and Robert Bonnlander, Jr. now appeal.

Appellants first argue that the court improperly applied Indiana law under the facts. The court solely relied on the case of *Lewis v. American Family Ins. Group*, Ky., 555 S.W.2d 579 (1977) in concluding that Indiana law applied. In *Lewis, supra,* two brothers were injured when the car in which they were riding collided with an uninsured motor vehicle. The tortfeasor was a Kentucky resident and the collision occurred in Kentucky. The automobile in which the brothers were riding was owned by one of the brothers.

The brothers were residents of Indiana and their vehicles were principally garaged in Indiana. American Family Insurance Group provided coverage to the brothers under a policy issued to one of the brothers and a second policy issued to their uncle. Both policies were sold and delivered in Indiana. In deciding that Indiana law applied, the Court stated:

> The modern test is "which state has the most significant relationship to the transaction and the parties." Restatement of Conflict of Laws, 2d, sec. 188 (1971). Using this test, in most cases the law of the residence of the named insured will determine the scope of his automobile liability insurance policy. Section 193 of the Restatement of Conflict of Laws 2d, states:
>
> "Contracts of Fire, Surety or Casualty Insurance
>
> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied."
>
> Because the insurance contracts in this case were entered into in Indiana between Indiana parties and concerned automobiles which were licensed and garaged in Indiana, we are of the opinion that Indiana law should govern the rights and liabilities of the parties under these contracts. *Allstate Insurance Co. v. Napier*, Ky., 505 S.W.2d 169 (1974).

*Lewis, supra* at 581–582.

Similarly, in the present case, the appellants were both residents of Indiana and they were both employed by an Indiana company, in whose vehicle they were riding at the time of the accident. Also, as to Timothy Bonnlander, he represented to Leader National at all times that he was an Indiana resident, that his car would be operated in Indiana and that he had an Indiana driver's license. Further, as stated earlier, Leader National issued him an Indiana policy specifically referring to applicable Indiana law.

With regard to Robert Bonnlander, Jr., the policy with Motorists Mutual under which he claims coverage was written through an agent in Indiana and was written pursuant to Indiana law. In addition, Robert Bonnlander, Jr. had an Indiana driver's license.

The only contacts with Kentucky are that the accident occurred here and the tortfeasor resided here. Appellants argue that such contacts are sufficient for Kentucky law to apply. Appellants then cite to *Arnett v. Thompson*, Ky. 433 S.W.2d 109 (1968), *Foster v. Leggett*, Ky., 484 S.W.2d 827 (1972) and *Wessling v. Paris*, Ky., 417 S.W.2d 259 (1967). Appellants apparently are confusing choice of law as it applies to torts and choice of law as it applies to contract actions. *Arnett, supra, Foster, supra* and *Wessling, supra*, were all tort actions where the Courts found that any significant contact with Kentucky was sufficient to allow Kentucky law to be applied. However, the instant case is a contract dispute and it has been held in contract actions that the law of the state with the greatest interest in the outcome of the litigation should be applied. *See Breeding v. Massachusetts Indemnity and Life Insurance Co.*, Ky., 633 S.W.2d 717 (1982).

Appellants also cite *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) in support of their position that sufficient contacts exist for Kentucky law to be applied. *Hague, supra*, however, can be easily distinguished from the case at bar. In the present case, neither appellant was employed by a Kentucky employer, nor did either appellant become a Kentucky resident prior to institution of the action. Moreover, the *Hague* Court held that an automobile accident need not occur within a particular state for that state to be connected to the occurrence such that application of that state's law would not be unconstitutional.

■ Appellants further maintain that because appellee insurance companies were authorized to do business in the state of Kentucky and each filed a "Declaration of Compliance with No-fault Insurance Requirements," they must provide underinsured motorists' coverage to appellants pursuant to Kentucky law. The declarations

filed by appellees pursuant to KRS 304.39–100(2) only require that appellees provide basic reparations benefits and the statutory minimum tort liability insurance on any covered vehicle while it is in the state of Kentucky. There is no requirement that they provide underinsured motorists coverage to their insureds. This is in keeping with the public policy of Kentucky's Motor Vehicle Reparations Act, which is to protect Kentucky residents from out-of-state vehicles which come into Kentucky and cause accidents and have inadequate or no insurance. It follows that basic reparations benefits and minimum tort liability insurance go with the vehicle, while underinsured motorists coverage is personal to the insured.

The other issues raised by appellee, Motorists Mutual, (that Robert Bonnlander, Jr. was not a resident member of the household of Robert Bonnlander, Sr. and was not entitled to underinsured benefits under Indiana law) cannot be reviewed by this Court since Motorists Mutual did not appeal that part of the judgment in Robert Bonnlander, Jr.'s favor. Those issues are not before us.

Given our decision in this case, the other arguments raised are rendered moot. For the reasons stated above, the judgments of the Boone Circuit Court are hereby affirmed.

All concur.