**Vicky POORE, Ancillary Administratrix of the Estate of Wayne D. Poore, Deceased; Vicky Poore, Individually; Cindy L. Poore; and Jarrod W. Poore, Appellants,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

No. 2005–CA–002187–MR.

Court of Appeals of Kentucky.

Nov. 3, 2006.

A. Andrew Draut, Louisville, KY, for appellant.

Michael E. Krauser, Eric S. Moser, Louisville, KY, for appellee.

Before JOHNSON and TAYLOR, Judges; BUCKINGHAM,[1] Senior Judge.

## OPINION

BUCKINGHAM, Senior Judge.

Vicky Poore, individually and as administratrix of the estate of her late husband, Wayne D. Poore, and the Poore children, hereinafter referred to collectively as the Poores, appeal from orders of the Bullitt Circuit Court entered in favor of Nationwide Mutual Insurance Company. The issue is whether Indiana law or Kentucky law should be applied in resolving the Poores' claim seeking to stack underinsured motorist insurance (UIM) benefits under two of the Poores' automobile insurance policies issued by Nationwide. We agree with the trial court that Indiana law should be applied. Therefore, we affirm.

Wayne D. Poore died as a result of injuries he received in an automobile accident in Bullitt County, Kentucky, in April of 1999. At the time of the accident, Poore, an Indiana resident, had left his place of employment in Bardstown, Kentucky, and was returning to his home in Memphis, Indiana. The accident occurred when Timothy Yonts, who was operating a vehicle owned by his mother, Javanna Reiter, struck the Poore vehicle, causing it to overturn.[2]

At the time of his death, Poore had five vehicles insured with Nationwide. Four of the vehicles were on one policy, while the fifth vehicle was covered under a second policy. Both policies, billed through separate premiums, contained UIM coverage for bodily injury with limits of $100,000 per person, $300,000 per occurrence.

The Poores filed several claims in the Bullitt Circuit Court. The claims against Yonts and Reiter included wrongful death, loss of consortium, and negligent entrustment. The Poores also filed a claim for UIM benefits against Nationwide.

Nationwide filed a motion for partial summary judgment on its claim that Indiana law should apply to determine the extent of the coverage under the Poores' policies. The Poores also filed a motion for partial summary judgment, arguing that Kentucky law should apply. Under Indiana law, the Poores would not be allowed to stack UIM coverage. Further, Indiana law allows the insurer to offset UIM coverage to the extent the insured settles with, or receives benefits from, the alleged tortfeasor.

The Poores settled their claims against Yonts and Reiter. Under the terms of the settlement agreement, the Poores released all claims against Yonts and Reiter in return for a settlement for the limits of their insurance coverage, $25,000. Thereafter,

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Yonts, who had been drinking, was subsequently convicted of a criminal offense as a result of the accident and was sentenced to a term of imprisonment.

the court made final its earlier orders determining, in favor of Nationwide, that Indiana law governed the Poores' policies with Nationwide. This appeal by the Poores followed.

 The test used in Kentucky to determine whether Indiana law or Kentucky law should be applied is "which state has the most significant relationship to the transaction and the parties." *Lewis v. American Family Ins. Group,* 555 S.W.2d 579, 581 (Ky.1977), *quoting Restatement of Conflict of Laws, 2d,* sec. 188 (1971). *See also Bonnlander v. Leader Nat'l Ins. Co.,* 949 S.W.2d 618, 619–20 (Ky.App.1996); *Snodgrass v. State Farm Mut. Auto. Ins. Co.,* 992 S.W.2d 855, 856–57 (Ky.App.1998); *Kentucky Nat'l Ins. Co. v. Lester,* 998 S.W.2d 499, 503 (Ky.App.1999). In applying the most significant relationship test, Kentucky courts have recognized that in most cases the law of the residence of the named insured will determine the scope of the coverage. *See Lewis, supra* at 582; *Bonnlander, supra* at 620; *Snodgrass, supra* at 856–57.

The facts in the *Lewis* case are very similar to those herein. In that case the Lewises, who were Indiana residents, were injured in an automobile accident in Kentucky when their vehicle was struck by a vehicle being driven by a Kentucky resident who was an uninsured motorist. Other similar facts were that the Lewis vehicles were licensed and garaged in Indiana and the Lewis insurance policies were entered into by the Lewises in Indiana. The *Lewis* court held that "(b)ecause the insurance contracts in this case were entered into in Indiana between Indiana parties and concerned automobiles which were licensed and garaged in Indiana, we are of the opinion that Indiana law should govern the rights and liabilities of the parties under these contracts." *Lewis,* 555 S.W.2d at 582.

Applying the significant relationship test, similar results were reached in the *Bonnlander, Snodgrass,* and *Lester* cases. In *Bonnlander* the tortfeasor was a Kentucky resident and the accident occurred in Kentucky. However, as in *Lewis,* the claimants were Indiana residents, the coverage sought involved policies issued in Indiana, and the policies referred to Indiana law.

Likewise, in *Snodgrass* the accident occurred in Kentucky and the tortfeasor was a Kentucky resident. As in prior cases, the claimants were not Kentucky residents and the coverage they sought was under policies covering out-of-state vehicles. In rejecting the claim that Kentucky law should apply, this court noted that the appellant had nothing more compelling than the facts relied on in *Bonnlander.* 922 S.W.2d at 856.

The underlying facts in the *Lester* case are on point with those in *Snodgrass.* The court in *Lester* likewise rejected the claim that Kentucky law should be applied in determining the coverage available under the contract. 998 S.W.2d at 503. In each of these three cases, the court considered the relevant contracts and determined that Kentucky did not have the most significant relationship with the transaction at issue and the parties.

The Poores attempt to avoid the result reached by the aforementioned cases by pointing to additional facts that, they argue, give Kentucky the most significant relationship to the transaction and the parties. They note that Mr. Poore was employed in Kentucky, he had a credit union account in Kentucky, they regularly shopped in Kentucky, they had purchased three vehicles in Kentucky, and they had several relatives who were Kentucky residents. They also note that the court in the *Bonnlander* case specifically recognized

that neither claimant was employed in Kentucky. 949 S.W.2d at 620. Also, the Poores note that the claimant in the *Snodgrass* case was not employed in Kentucky.

■ The Poores have failed to show how any of these additional facts have any relationship to the transaction, with the possible exception of Mr. Poore's employment. However, neither the *Bonnlander* case nor the *Snodgrass* case suggests that Kentucky employment should be the deciding factor or the distinguishing factor.

Finally, the Poores cite *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), as supporting their argument that Kentucky employment distinguishes the facts in this case from those cited earlier herein. In the *Hague* case, the drivers of the two vehicles were both Wisconsin residents, the accident occurred in Wisconsin, and the insurance policy involved was issued in Wisconsin. However, the deceased had been employed in Minnesota, and the personal representative of his estate (his wife) moved to Minnesota after his death. The U.S. Supreme Court affirmed a decision by the Minnesota court that the law of Minnesota applied to allow the stacking of insurance benefits. 449 U.S. at 320, 101 S.Ct. 633.

The Minnesota court in *Hague* applied a choice-of-law analysis different from the most significant relationship test applied in Kentucky. A close reading of the *Hague* case demonstrates that the Supreme Court would not say whether it agreed with the choice-of-law analysis used by the Minnesota court or whether it "would make the same choice-of-law decision if sitting as the Minnesota Supreme Court." Id. at 307, 101 S.Ct. 633. Instead, the Supreme Court merely addressed whether the Minnesota court's decision violated due process or full faith and credit principles embodied in the U.S. Constitution. *Id.* at 320, 101 S.Ct. 633.

Kentucky cases have considered the impact of the *Hague* case. In *Bonnlander*, this court recognized that the issue in *Hague* concerned the constitutionality of the Minnesota decision under due process and full faith and credit principles. 949 S.W.2d at 620. A similar conclusion was reached in *Snodgrass*. 992 S.W.2d at 857. The court in *Snodgrass* went a step further and recognized the application of Kentucky's significant relationship test as simply more restrictive than the choice-of-law principle applied by the Minnesota courts. Id. We recognize, as did the court in *Snodgrass*, that "(t)his court is without jurisdiction to abandon the precedents established in *Lewis* [.]" Id. at 858. We therefore conclude that the Poores' reliance on Mr. Poore's place of employment as determinative of the applicable choice of law in this case is misplaced.

The orders of the Bullitt Circuit Court are affirmed.

ALL CONCUR.